**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HOWARD WEBB,**

       **Plaintiff,**

**v.**                                      **Case No.  8:05-cv-227-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**

                                         /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is reversed and remanded.

**I.**

Plaintiff was fifty-two years of age at the time of his administrative hearing.  He stands 5', 11" tall and weighed 220 pounds.  Plaintiff has a high school education.  His past relevant work was as a truck driver, although more recently had worked part-time as a banquet server and bartender.  Plaintiff applied for disability benefits and Supplemental Security Income payments in January 2002, alleging disability as of March 15, 2001, by reason of high blood pressure and associated vision problems, asthma, anemia, arthritis and

joint pain, a shoulder injury, stomach ulcer, partially paralyzed leg, fatigue, and pain.  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  At the hearing, Plaintiff was represented by counsel.  In essence, Plaintiff claimed that he could no longer work at any job because of a variety of problems and limitations.  He began passing out while working as a banquet server when he moved too fast or worked or walked up the stairs and because he was constantly in the bathroom.  Plaintiff testified that he was shot many years before and lost one-third of his stomach, and his right leg was partially paralyzed.  Standing for a long period of time causes swelling in his leg.  Plaintiff estimated that he can only stand or walk for about twenty or twenty-five minutes before he must sit down.  He further indicated that he could not sit straight up for a half-hour or forty-five minutes but could sit for less than an hour if he can lie to the side.  He cannot go for four or five hours without lying down.  He estimated that he could lift about twenty or thirty pounds but could not carrying that weight very far.  He also claimed a back injury from a Jeep accident when he was in the Army.  Additionally, he suffers from high blood pressure, which causes him headaches and vision problems.  He takes medication for his high blood pressure.  Plaintiff has taken ibuprofen for the headaches and pain in his leg and back, but it upsets his stomach and irritates his ulcer.  He indicated that he sleeps during the daytime but is unable to sleep at night because he is hungry, since he does not eat before going to bed because of his fecal incontinence.  Plaintiff also indicated that he sleeps sitting up and cannot lie down because of his asthma.

Plaintiff worked as a bartender and banquet server on-and-off from January through March of 2001. Plaintiff testified that such jobs accommodated his inability to work constantly. However, his blacking out became a problem when he was serving hot food, and he was often fired from jobs because he would "disappear to go to the bathroom."

Plaintiff is divorced and lives with his sixteen-year-old son. Plaintiff does not drive a car because his driver's license was suspended because of failure to pay child support. Plaintiff testified that he no longer drinks beer because he is unable to go to the store to get it, and no one will bring it to him. According to Plaintiff, his older son and wife do his grocery shopping, and his daughter comes over to do his laundry and clean the house. He no longer cooks for himself. On a typical day, he just sits by the air conditioning and watches television or looks out the window. He receives food stamps, but he does not receive a pension from the Department of Veterans Affairs (hereinafter "VA") or child support for his son. His son receives money from his mother's death, but he spends it without contributing to household expenses. See Plaintiff's testimony (R 370-90).

Also before the ALJ were medical records outlining the Plaintiff's medical history. The ALJ's review of these matters are generally accepted by the Plaintiff, see (Doc. 21 at 3), and are addressed herein as necessary.

By his decision of October 29, 2004, the ALJ determined that while Plaintiff has severe impairments related to remote history of gunshot wound to the abdomen and right lower extremity; history of asthmatic bronchitis, history of peptic ulcer disease and gatroesophageal reflux disease, history of seizure disorder, and hypertension, as well as non-

severe mental impairments,[1] he nonetheless had the residual functional capacity to perform nearly a fully range of light work.  Upon this finding and after applying the Medical-Vocational Rules, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 12-20).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payment, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

---

[1]The ALJ expressly cited personality disorder/intermittent explosive disorder, possible post-traumatic stress disorder, and a history of alcohol abuse but only mild difficulties in maintaining social functioning, maintaining concentration, persistence, or pace.

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, *et seq*. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education,

5

and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids."  Id. at Part 404, Subpart P, Appendix 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  Id. at § 404.1569.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  The Commissioner erred by relying upon the Medical-Vocational Rules when there are significant non-exertional limitations present; and

(2)  The Commissioner erred in failing to fully and adequately develop the evidence.

By his first claim, Plaintiff raises the recurring issue of whether the ALJ may rely exclusively on the grids for decision or whether a vocational expert (hereinafter "VE") is required.  The decision in Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995), is instructive on the law:

> Once the finding is made that a claimant cannot return to
> prior work the burden of proof shifts to the [Commissioner]
> to show other work the claimant can do. . . . The
> [Commissioner] bears the burden of establishing that
> Appellant, who could not perform her past work, could
> perform alternative work in the national economy. Although
> this burden can sometimes be met through straightforward
> application of the Medical-Vocational Guidelines (the
> "grids"), the regulations regarding the implementation of the
> grids caution that they are only applicable under certain
> conditions.  For example, the claimant must suffer primarily
> from an exertional impairment, without significant
> non-exertional factors. . . . Exclusive reliance on the grids is
> appropriate in cases involving only exertional impairments
> (impairments which place limits on an individual's ability to
> meet job strength requirements). . . . Pain is a nonexertional
> impairment. . . . Exclusive reliance on the grids is
> inappropriate when a claimant has a nonexertional
> impairment that significantly limits the claimant's basic work
> activities. . . . If the grids are inapplicable, the
> [Commissioner] must seek expert vocational testimony.

Id. at 1559 (citations omitted).

In Marbury v. Sullivan, 957 F.2d 837 (11th Cir. 1992), the court further addressed

the interplay between the grids and non-exertional impairments.  There, the ALJ found certain

non-exertional impairments including seizure disorder, peptic ulcer disease and an affective

disorder; however, he determined the Plaintiff could do a full range of light work and no

vocational expert was necessary.  In rejecting this conclusion and the ALJ's reliance on the

grids, the court stated, "it is only when the claimant can clearly do *unlimited* types of light

work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy."  Id. 957 F.2d at 839 (citing Allen v.

Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989), and quoting Ferguson v. Schweiker, 641 F.2d

243, 248 (5th Cir. Unit A, Mar. 1981) (emphasis in original)).  The court concluded that upon

7

the ALJ's findings that Plaintiff suffered non-exertional impairments, "it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights and dangerous moving machinery." Marbury, 957 F.2d at 839 (emphasis in original).  Accordingly, expert testimony was required to determine whether the claimant's limitations were severe enough to preclude him from performing a wide range of light work.  See also Phillips v. Barnhart, 357 F.3d 1232 (11th Cir.2004).[2]

However, the Eleventh Circuit has recognized that non-exertional limitations can cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level.  See Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  Where an ALJ finds that any non-exertional limitations  do not preclude a wide range of employment at the given exertional level, such determination is reviewed only to determine whether it is supported by substantial evidence.

Here, Plaintiff argues that he had significant non-exertional limitations that precluded the use of the grids by the ALJ in reaching his determination.  Specifically, Plaintiff argues that the ALJ failed to take into account his need to go to the bathroom frequently; his psychological impairments of personality disorder and intermittent explosive disorder; and his

---

[2]A number of other decisions in this circuit have also determined the need to call a vocational expert in lieu of exclusive reliance on the grids.  See Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988) (limitation on climbing, balancing, working at heights or around dangerous machinery); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations);  Gibson v. Heckler, 762 F.2d 1516, 1521 (11th Cir. 1985) (limitation on sitting and standing); McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988) (limitation on sitting and standing); Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990) (pain and dizziness); Falcon v. Heckler, 732 F.2d 827 (11th Cir. 1984) (depression and low back pain); Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity).

postural limitations for only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  Therefore, he argues that the ALJ erred by failing to take evidence from a vocational expert to determine whether there exists in the national economy a significant number of jobs for an individual with all of Plaintiff's limitations.

With respect to Plaintiff's claims of fecal incontinence, the Commissioner responds only that there is no evidence that Plaintiff's gunshot wound to the abdomen in 1979 caused frequent trips to the bathroom or significantly affected his ability to perform any basic work activities.  In support, the Commissioner cites to the reports of State Agency Office of Disability Determinations examining physicians, Dr. Robert B. Burchett (R. 183-86), and Dr. George M. Adams (R. 234-37).  The Commissioner also cites to two x-rays of Plaintiff's abdomen taken in 1985 that revealed normal bowel gas patterns with no bowel obstructions. See (R. 169-70); see also (R. 133).  She also points out that Plaintiff worked as a bartender and food service worker between 1985 and 2001, despite the old gunshot wound.  As for the claimed mental limitations, the Commissioner notes that there was no acceptable medical evidence of a mental impairment.  As for the claimed postural limitations, the Commissioner discounts this evidence from the state agency reviewing doctors as not controlling on the opinions of the ALJ

Upon consideration of the medical record, the Commissioner oversimplifies Plaintiff's complaints of fecal incontinence.  On the contrary, the medical evidence reveals that in June 1985, Plaintiff underwent a subtotal gastrectomy with Bilroth II reconstruction to treat a gastric outlet obstruction due to scarring from chronic peptic ulcer disease. See (Docs. 128, 137).  While the x-rays in the two months following the procedure revealed normal

bowel gas patterns with no bowel obstructions, see (R. 169-70), the record reveals a subsequent history of complaints about abnormal bowel movements and irregular stool. For example, Dr. Henry J. Weiss examined Plaintiff in July 1993 and noted that "[Plaintiff] also complains of loose bowel movements and blood with his [bowel] movements on a regular basis and sometimes blood is bright red blood, sometimes he just complains of dark stool." (R. 164). In July 1998, upon a visit to the emergency room for abdominal pain, Plaintiff was diagnosed with "dumping syndrome."[3] (R. 167). Records from the VA Medical Center indicate that in February 2003, Plaintiff requested a consultation from his primary care physician for complaints of numerous problems, including urinary and fecal incontinence. See (R. 293). At this consultation, Plaintiff "claims that he moves his bowels anywhere from 4-12 times a day; that they are not formed. There is no rectal pain. He does have rectal urgency with the bowel movement. He denies melena. He states that spicy foods, citric acid, everything upsets his stomach. There is a past history of 'many stomach ulcers' as noted." (R. 310) A neurology consultations from May 2003 found no evidence of seizures or encephalopathy, but it acknowledged Plaintiff's complaints of GTC (generalized tonic-clonic) seizures with fecal and urinary incontinence. See (R. 302, 303).[4] An ambulatory care note from October 2003 indicated that after eating pastries left out on the counter at home, Plaintiff

---

[3]This syndrome is defined as "a complex reaction probably due to excessively rapid emptying of the gastric contents, manifested by nausea, weakness, sweating, palpitation, varying degrees of syncope, often a sensation of warmth, and sometimes diarrhea, occurring after ingestion of food by patients who have had partial gastrectomy and gastrojejunostomy." Dorland's Illustrated Med. Dictionary 519 (25th ed. 1974). In his decision, the ALJ incorrectly refers to this visit as occurring in July 1995. See (R. 14).

[4]Here, however, notes indicate that Plaintiff denied abdominal pain, diarrhea, constipation, jaundice, or change in frequency of urination. See (R. 304).

10

complained of developing nausea and of having "10+ tan, non-hemic malodorous stools q.d. since that time." (R. 344). The following day, he woke with abdominal cramping, diarrhea, and reflux; and he stated that the stool was foul-smelling but contained no blood. See (R. 344). Thus, the medical record indicates that he is status post subtotal gastrectomy and status post Bilroth II reconstruction, conditions which might account for abnormal bowel movements and stool at various times since his surgery and which offer some support to Plaintiff's testimony that when he eats, in particular, he has to go to the bathroom frequently. (R. 374-75).

Further, the medical record offers some minimal support for the claimed postural limitations. Both state agency reviewing doctors assessed occasional postural limitations related to climbing, balancing, stooping, kneeling, crouching, and crawling.[5] (R. 196, 317). Beyond these two assessments, there was also evidence from a consulting physician, Dr. Robert B. Burchett, M.D., that noted that Plaintiff could not deep knee bend, hop, or squat halfway to the floor apparently by reason of pain in the right leg. (R. 184-85). Another examining doctor, Dr. George M. Adams, M.D., found the right leg somewhat larger than the left consistent with a history of swelling, and he estimated a maximum of 5% motor deficit in the lower extremities. (R. 237).

---

[5]Dr. A.E. Archibald-Long, M.D., also indicated Plaintiff should avoid all exposure to hazards such as machinery and heights. (R. 198). No such limitation was imposed by Dr. Klingle, M.D. (R. 319). While the ALJ was obliged to consider such evidence, it is not necessarily controlling. In this circuit, the reports of reviewing non-examining doctors do not constitute substantial evidence on which to base a decision, and when the opinions of such doctors are contrary to those of examining doctors, they are entitled to little weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).

As for the claimed psychological impairments, Plaintiff's claim of diagnoses for personality disorder and intermittent explosive disorder is evidenced only by the opinion of a nurse practitioner and no other acceptable medical source. (R. 286-87). That the Plaintiff was described as "confabulatory" in the VA records cannot, in my view, be read to indicate a mental illness. While there is some evidence of a treatment plan with the VA, Plaintiff testified that he cut it off because he disliked the way they treated him. (R. 380).

As the decision reflects, the claims of bathroom frequency and anger control, together with several other subjective complaints were generally discounted to the extent that Plaintiff claimed he was disabled by the symptoms because of a lack of medical support and non-medical evidence including comments by treating professionals questioning Plaintiff's veracity and the fact that Plaintiff had worked for many years with these symptoms. (R. 17). As the Commissioner notes, Plaintiff didn't claim disability by reason of any mental condition and the ALJ's conclusion that the impairment was mild at best appears more than fair to the Plaintiff in light of the record he presented.[6]  While he may have had to use the bathroom frequently after eating as he claimed, the condition had simply not kept him from working, even beyond his alleged onset date,  and the frequency and duration of such problem are not borne out by much of the medical history. However, because the court is ordering a remand for the ALJ to consider the import of postural limitations, the ALJ should again consider this condition in light of any supporting medical record and with the VE if appropriate.

---

[6]Although the ALJ has a duty to fully and fairly develop the record even when a claimant is represented by counsel, the burden of proving disability is on the claimant and consequently, so is the burden of producing evidence to support the claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

12

In addressing the postural limitations, the ALJ concluded that Plaintiff had no impairment that could reasonably result in such limitations.  See id.  After careful review of the record, however, the court concludes that the evidence of such postural limitations was sufficient to warrant consideration of the limitations by a VE before a decision could be reached in this case.  In the court's view, the blanket statement by the ALJ that there was no impairment which could account for the postural limitations is overbroad and contradicted by the assessments of the non-examining doctors and two consulting doctors.[7]  According to the examining doctors, there were conditions which supported some limitations in the lower extremities.  Even if the opinions of the non-examining doctors were not controlling, the limitations they assessed were not inconsistent with the medical record and were otherwise supported to a degree by the conclusions of these examining doctors.   The ALJ could only reach the conclusion he did by substituting his medical opinion for that of these doctors.  Because it appears that postural limitations could restrict the Plaintiff's ability to do an unlimited range of light exertional work, the court finds a remand is appropriate for the ALJ to call a vocational expert to render an opinion as to the extent, if any, that such a limitation would affect Plaintiff's ability to perform a wide range of work or the types of jobs, if any, which would accommodate this limitations.

By his second claim, Plaintiff argues that the ALJ failed to perform his basic duty to develop the complete medical record by failing to order a consultative examination regarding Plaintiff's psychological condition.  A duty to develop the medical record exists whether the

---

[7]As such statement may relate to certain postural limitations claimed by the Plaintiff, the statement is likely correct.

claimant is represented by counsel or not.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  Because of the Commissioner's duty to develop a full and fair medical record, it may be error for an ALJ not to order a consultative examination when "such an evaluation is necessary for him to make an informed decision."  Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).  As noted above, the Plaintiff bears the burden of producing evidence to support that he is disabled.  On remand, the Plaintiff will again have the opportunity to provide all supporting evidence of a psychological condition and to call for a further consultative examination if appropriate.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 22nd day of March 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

14